**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernadette Craig, | No. CV 22-8066-PCT-JAT |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi,<br>Commissioner of Social Security | |
| Defendant. | |

Pending before the Court is Plaintiff Bernadette Craig's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (Doc. 1). The appeal is fully briefed. (Doc. 12, Doc. 13, Doc. 15). The Court will now rule.

## I.     BACKGROUND

The issues presented on appeal are whether the Administrative Law Judge ("ALJ") erred in her "step three" analysis in finding Plaintiff was not per se disabled and whether the ALJ failed to properly assess a medical source's opinion.

### A. FACTUAL OVERVIEW

On July 22, 2019, Plaintiff filed for DIB pursuant to Sections 216(i) and 223 of the Social Security Act. (Doc. 11-13 at 15; Doc. 11-6 at 2-5).  She also applied, on August 6, 2019, for SSI pursuant to Title XVI of the Act. (Doc. 11-13 at 15; Doc. 11-6 at 6-16). Her claims were denied initially and on reconsideration. (Doc. 11-3 at 2, 15).

Plaintiff then requested an administrative hearing before an ALJ. She appeared and testified on November 18, 2020. (Doc. 11-3 at 37-59). On February 25, 2021, (*Id.* at 15-31), the ALJ found that Plaintiff was not entitled to benefits because she could perform work existing in significant numbers in the national economy. (*Id.* at 29). The Appeals Council declined to review the decision.

### B. The SSA's Five Step Evaluation Process

To qualify for Social Security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)-(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the

claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

## C. The ALJ's Application of the Factors

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2015. (Doc. 11-3 at 19). At step two, the ALJ found that Plaintiff had a number of severe impairments: hidradenitis suppurativa, peripheral neuropathy, osteoarthritis of the spine with radiculopathy and compression fractures of the T4 and T8 vertebrae, polycystic ovarian syndrome, morbid obesity, chronic pain syndrome, and an unspecified anxiety disorder. (*Id.* at 19). The ALJ found that from January 1, 2015, through December 31, 2016, Plaintiff's hidradenitis suppurativa would have been disabling pursuant to Listing 8.06 of 20 CFR Part 404, Subpart P, Appendix 1, which requires extensive skin lesions in both armpits despite following prescribed treatment. (*See id.* at 19–21); *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.06.1. Plaintiff had surgical procedures in 2015 and 2016 to address this condition and had recovered by the end of 2016. (*See id.* at 21).

At step three, the ALJ determined that, beginning January 1, 2017, none of Plaintiff's impairments met or equaled the severity of a listed impairment. (*Id.* at 22–23);

20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that from January 1, 2017, until January 8, 2019, Plaintiff could perform light work. (*Id.* at 25). The ALJ also found she could stand and walk for 4 hours; sit for 6 hours; could not operate foot controls; could occasionally climb stairs and ramps, stoop, crouch, kneel, and crawl; could not climb ladders, ropes, or scaffolds; and could frequently handle and finger bilaterally. (*Id.* at 25). Additionally, the ALJ found that Plaintiff developed mental limitations on January 8, 2019. And, as of July 15, 2020, needed to use a cane to walk. (*Id.* at 25–27).

Based on that RFC finding and the testimony of a vocational expert, (*Id.* at 54), the ALJ determined at step four that although Plaintiff was able to return to her past relevant work between January 1, 2017, and January 8, 2019, she was not able to perform the past work since January 8, 2019. (*Id.* at 28). The ALJ found at step five, however, that Plaintiff was capable of other work in the national economy. (*Id.* at 28-29). Therefore, the ALJ held that Plaintiff was not disabled for purposes of SSI or DIB. (*Id.* at 31).

## II.    LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). Substantial evidence means "More than a Scintilla ... but less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Under this standard, courts look at "an existing administrative record and ask[] whether it contains sufficient evidence to support the [ALJ's] ... factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). This Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See*

*Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d. 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

Oftentimes, the ALJ's decision is based on the weight the ALJ gives to evidence from physicians. In deciding whether these determinations were made appropriately, the Court must assess whether the ALJ complied with the 2017 revised rules for evaluating medical evidence. *See* 20 C.F.R. § 404.1520c. Prior to the 2017 revision, the rules required ALJs to give greater weight to the opinions of treating physicians over those of non-treating physicians. *Woods v. Kijakazi*, 32 F.3d 2022, 791 (9th Cir. 2022). The revised rules did away with this relationship-based assessment of physician evidence and replaced it with a standard based around the supportability and consistency of that evidence. *See id.*; 20 C.F.R. § 404.1520c(a).

The revised rules require ALJs to consider five factors: 1. The supportability of the medical opinions, 2. how consistent the medical opinions are with evidence from both medical and non-medical sources in the claim, 3. the relationship between the medical source and the claimant, 4. whether the physician specializes in the types of disabilities involved in the claim, and 5. other general factors that either support or contradict that medical opinion. *See* 20 C.F.R. § 404.1520c(c).

In order for a person to be considered disabled under the Act, they must present "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which shows the existence of a medical impairment ..." 42 U.S.C. § 423(d)(5)(A). "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability." *Id.* The focus of the inquiry set forth in the Act is on the accuracy and credibility of the medical opinions. The scientific

quality of the evidence is its benchmark. The Act does not focus the inquiry on whether the physician is a treating physician or on the specific role he has. Thus, a rule that centers on supportability and consistency fits more closely with the text of the Act.

ALJs are also required to make credibility determinations related to a claimant's testimony. To undertake this analysis, the ALJ must engage in a two-part inquiry. First, he must see whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged[.]" *See Smolen*, 80 F.3d at 1281. Second, the ALJ must evaluate evidence relating to the intensity, persistence, and limiting effects of the alleged symptoms. *See* 20 C.F.R. § 404.1529. Notably, the claimant does not need to produce "objective medical evidence of the pain" itself or of the causal relationship between the medically determinable impairment and the symptom." *Smolen*, 80 F.3d at 1282. Furthermore, the claimant does not need to show that the alleged impairment "could reasonably be expected to cause the severity of the symptom," only that it could reasonably "have caused some degree of the symptom." *Id.* If this two-part standard is met by the claimant, then the ALJ can only reject testimony about the severity of the symptoms if he provides "specific, clear and convincing reasons for doing so." *Id.* at 1281.

Under the third step, the ALJ asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1, which determines if an impairment caused by certain conditions is severe enough to entitle the individual to benefits. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. The impairment must also meet the duration requirement. *See* 20 C.F.R. § 416.920(a)(4)(iii). In the case of hidradenitis suppurativa, the impairment must persist for three months despite treatment. *Id.* If both are met, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.*; *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

## III.   ANALYSIS

Plaintiff claims that the ALJ failed, at step three, to find Plaintiff's hidradenitis suppurativa was disabling pursuant to Listing 8.06. (Doc. 12 at 12). She asserts that the

ALJ did not adequately credit her consultative examination. (*Id.* at 14). She also states that the ALJ did not adequately address her dermatologist records. (*Id.* at 13). Furthermore, Plaintiff contends that the ALJ impermissibly dismissed the medical findings of a nurse practitioner. (*Id.* at 14-18). This Court finds that the ALJ's decision is supported by substantial evidence. Thus, the ALJ's determination will be upheld.

### A. Step Three Analysis

Plaintiff claims that the ALJ erred in her determination that Plaintiff's hidradenitis suppurativa was not severe enough to satisfy Listing 8.06. (*Id.* at 12–13). While Plaintiff points to evidence that suggests her condition was disabling, there is also strong evidence, which the ALJ cited, that supports her determination that Plaintiff was not disabled. Consequently, substantial evidence supports the ALJ's determination that Plaintiff's impairment was not severe enough to meet or equal a listing under 20 C.F.R. pt. 404, subpt. P, app. 1. Furthermore, substantial evidence supports the ALJ's determination Plaintiff's impairment did not meet the duration requirement. 20 C.F.R. § 416.920(a)(4)(iii). According to the CFR, for hidradenitis suppurativa to be to be severe enough to be disabling under Listing 8.06, a plaintiff must suffer from extensive skin lesions in both armpits, both sides of the groin, or the perineum, which persisted for at least three months despite continuing treatment as prescribed. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.06. The ALJ did not find that this was the case for Plaintiff. Thus, there is substantial evidence to support the ALJ's conclusion that the Plaintiff did not meet Listing 8.06. Because the evidence here is "susceptible to more than one rational interpretation" the ALJ's decision will be upheld. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

First, as the ALJ noted, the record does not indicate Plaintiff's skin lesions persisted despite continued treatment. (Doc. 11-3 at 22). The ALJ found that after 2017 Plaintiff did not receive substantive treatment for her hidradenitis suppurativa. (*Id.*). The ALJ also concluded that there was not currently evidence of an infection requiring major substantive treatment in the areas treated in 2016. (*Id.* at 21). Furthermore, the ALJ found Plaintiff was walking daily, which implied she did not have lesions or outbreaks in other body areas. (*Id.*

at 22). The ALJ also determined Plaintiff's medical records did not document extensive skin lesions over this time period. (*Id.* at 22). Additionally, she noted that while Plaintiff did receive an additional surgery in January 2020, it was only for the right armpit, indicating she did not have extensive skin lesions in other areas, particularly her left armpit. (*Id.* at 22). Because of this, the ALJ found that the bilateral requirement for hidradenitis suppurativa under Listing 8.06 was not satisfied. (*Id.*). This Court thus concludes that substantial evidence supports the ALJ's determination the Plaintiff's impairment was insufficiently severe.

Substantial evidence also supports the ALJ's determination that Petitioner's impairment did not persist long enough to be disabling. The ALJ found that, while there was evidence that Plaintiff still has hidradenitis suppurativa, there was no evidence that she required substantive treatment between January 2017 and January 2020. (*Id.* at 24). As stated above, the ALJ noted that the procedure in 2020 only involved the right axilla. (*Id.*) Thus, she did not meet the requirement that both axillae be affected. (*Id.*). The ALJ determined that there was not evidence that she met the listing after her surgery in 2016, and thus that she did not meet the duration requirement. (*Id.*).

Plaintiff claims the ALJ erred by failing to reference Plaintiff's dermatologist records. (Doc. 12 at 13). Yet Plaintiff only started seeing a dermatologist in 2020. (*See id.* at 13; Doc. 13 at 9). As noted above, at this time, Plaintiff only had an outbreak in her right armpit. Because only one armpit was affected, and there were no other issues, as the ALJ found, she did not meet the duration requirement for her impairment. Thus, the ALJ did not need to reference her dermatology records. Even if the evidence contained in the record could, with fair and accurate reading, at least possibly result in Plaintiff meeting Listing 8.06, where evidence is "susceptible to more than one rational interpretation" the ALJ's decision will be upheld. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Thus, the ALJ's order will be affirmed.

## B. The ALJ's Credibility Determination

Furthermore, this Court affirms the ALJ's decision to reject Nurse Mickle's medical

opinion because substantial evidence supports the ALJ's assessment of the medical source's opinion for credibility, supportability, and consistency. First, the ALJ noted that Nurse Mickle's report consisted of a "checkbox style form with little to no rationale provided for the selections made." (Doc. 11-3 at 27). Other examinations, which unlike Nurse Mickle's did not recommend strict limitations on Plaintiff's exertional activity, provided detailed rationales for their assessments and recommendations. (*Id.*). Second, the ALJ found insufficient correlation between Ms. Mickle's observations and Plaintiff's diagnosis. (*Id.*). The ALJ noted that although Plaintiff has neuropathy, back issues, and hidradenitis suppurativa, she did not require major intervention for her hidradenitis, the evidence of her back pain was "equivocal," and that she had at times denied symptoms of neuropathy. (*Id.*). All of this suggested to the ALJ that Nurse Mickle's opinion was not credible under the revised credibility rules. (*Id.*). The ALJ's decision to rely on other medical opinions was substantially supported by the record.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 28th day of April, 2023.

James A. Teilborg
Senior United States District Judge

- 9 -